1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES EDWARD VALLEY,

11              Plaintiff,                    No. CIV S-08-0112 WBS GGH P

12        vs.

13   JAMES E. TILTON, et al.,

14              Defendants.              <u>ORDER</u>

15   _____/

16              Plaintiff is a state prisoner proceeding pro se.  He seeks relief pursuant to 42

17   U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma

18   pauperis.  This proceeding was referred to this court by Local Rule 72-302 pursuant to 28 U.S.C.

19   § 636(b)(1).

20              Plaintiff has submitted a declaration that makes the showing required by 28

21   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

22              Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

23   U.S.C. §§ 1914(a), 1915(b)(1).  An initial partial filing fee of $ 9.38 will be assessed by this

24   order.  28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate agency to

25   collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the

26   Court.  Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the

                                              1

1  preceding month's income credited to plaintiff's prison trust account.  These payments will be

2  forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's

3  account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

4        The court is required to screen complaints brought by prisoners seeking relief

5  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

6  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

7  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

8  granted, or that seek monetary relief from a defendant who is immune from such relief.  28

9  U.S.C. § 1915A(b)(1),(2).

10        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

11  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

12  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

13  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

14  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

15  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

16  Cir. 1989); Franklin, 745 F.2d at 1227.

17        A complaint must contain more than a "formulaic recitation of the elements of a

18  cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

19  speculative level." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007).

20  "The pleading must contain something more...than...a statement of facts that merely creates a

21  suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

22  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).  In reviewing a complaint under this

23  standard, the court must accept as true the allegations of the complaint in question, Hospital

24  Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light

25  most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.  Jenkins v.

26  McKeithen, 395 U.S. 411, 421 (1969).

1    On the face of it, plaintiff's complaint, including exhibits, exceeds three hundred

2    pages (it has 314 pages to be precise) and is wholly violative of Rule 8.  Fed. R. Civ. P 8 sets

3    forth general rules of pleading in the federal courts.  Complaints are required to set a forth (1) the

4    grounds upon which the court's jurisdiction rests, (2) a short and plain statement of the claim

5    showing entitlement to relief; and (3) a demand for the relief plaintiff seeks.  All that is required

6    are sufficient allegations to put defendants fairly on notice of the claims against them.  See

7    Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957);  5 C. Wright & A.

8    Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).  Rule 8 requires "sufficient

9    allegations to put defendants fairly on notice of the claims against them."  McKeever v. Block,

10   932 F.2d 795, 798 (9th Cir. 1991)).  Accord Richmond v. Nationwide Cassel L.P., 52 F.3d 640,

11   645 (7th Cir. 1995) (amended complaint with vague and scanty allegations fails to satisfy the

12   notice requirement of  Rule 8.)

13   Even if the factual elements of the cause of action are present, but are scattered

14   throughout the complaint and are not organized into a "short and plain statement of the claim,"

15   dismissal for failure to satisfy Rule 8(a)(2) is proper.  McHenry v. Renne, 84 F.3d 1172, 1178

16   (9th Cir. 1996) (stating that a complaint should set forth "who is being sued, for what relief, and

17   on what theory, with enough detail to guide discovery" (emphasis added)).  A complaint that fails

18   to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to Fed. R. Civ. P.

19   41(b).  Rule 8; Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981)).  Further,

20   "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the

21   complaint is wholly without merit," McHenry 84 F.3d at 1179.

22   The complaint in this action illustrates the "unfair burdens" imposed by

23   complaints, "prolix in evidentiary detail, yet without simplicity, conciseness and clarity" which

24   "fail to perform the essential functions of a complaint."  McHenry , 84 F.3d at 1179-80.

25   Moreover, in asserting multiple unrelated claims against different defendants (or against some of

26   whom he has not clearly identified as defendants), plaintiff presents the kind of "mishmash of a

3

complaint" that has been roundly repudiated.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)("[u]nrelated claims against different defendants belong in different suits").

Plaintiff names nine defendants: James Tilton, Secretary of the California Department of Corrections and Rehabilitation (CDCR); the current and former wardens of California State Prison-Sacramento (CSP-Sac), A.J. Malfi and Scott Kernan, respectively; CSP-Sac Associate Warden R. Mandeville; CSP-Sac Lieutenants B. Holmes and K. Grandon; M. Ruff, Chairperson of the Law Enforcement Investigation Unit (location unidentified); the warden of Pelican Bay State Prison (PBSP) Robert A. Horel; and PBSP Chief Medical Officer Michael Sayre.

Plaintiff begins by referencing an earlier case he filed in February, 2005, Case No. 05-0310 MCE KJM P, in which Warden Kernan was named as a defendant.  The court takes judicial notice[1] of that case and notes that defendant Kernan has been granted summary judgment in the earlier case, although the defendants' dispositive motion was pending at the time plaintiff filed this action, and, indeed, the case is proceeding to trial as to two other defendants named therein.[2]  Plaintiff alleges in this action that defendant Kernan, because of administrative grievances plaintiff had filed and the civil rights complaint he had previously filed against him, "orchestrated" a "campaign of harassment" in retaliation against plaintiff.  Complaint, p. 5.[3]

Plaintiff states that on October 9, 2005, while he was in his cell, he looked up to see defendant Kernan "standing quietly looking at him in hateful stare [sic]."  Id. at 6.  Plaintiff states that previously the classification committee had found that plaintiff met the criteria to be transferred to a lower security prison, on October 4, 2005, and but that he believes that defendant

---

[1] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

[2] See Order, filed on March 17, 2008, in Valley v. Woodford, et al., CIV S-05-0310 MCE KJM P.

[3] The undersigned references the pagination of the court's electronic docketing system.

4

1    Kernan knew of the classification committee finding and had also become aware of plaintiff's

2    lawsuit against him and knew as well that he (Kernan) was to be replaced in a few months so that

3    he had to "act fast." Id. at 7.   Plaintiff states that he was subjected to a lockup order on October

4    14, 2005, but the prison staff could have reviewed a video that an undescribed incident had not

5    actually occurred.  Id.  Plaintiff also received a Rule Violation Report for refusing to cell with

6    another inmate against he "was supposed to have made a threating [sic] motion toward."   Id.

7              In very garbled fashion, plaintiff continues with the allegation that the prospective

8    cellmate was a "gang confidential informant" with whom plaintiff was "set up" to cell.  Compl.,

9    pp. 7-8.  On  October 19, 2005, the Administrative Segregation Committee, of which defendant

10   Kernan was the chairman, wanted to release plaintiff from ad seg, but the chairperson (Kernan)

11   would not do so.  Id. at 8.   (Of course, plaintiff does not clarify how he knows this or provide the

12   factual predicate for such specific knowledge.)  On October 26, 2005, after a new Ad Seg

13   Committee chairperson served on the committee, plaintiff was released from segregation.  Id.

14   Plaintiff then goes on to state that once out of ad seg, he filed grievances to the then CDCR

15   director, Jeanne Woodford, complaining of harassment arising from the filing of  Case No.

16   05-0310 MCE KJM P.  Id.  Plaintiff contends that "(somehow) the committee in segregation

17   orders to transfer never got put back in on 11-25-05," and that he filed another grievance that

18   resulted in a partial grant but no action was taken to transfer him.  Id.  Plaintiff evidently sought

19   leave to amend in of Case No. 05-0310 MCE KJM P, apparently to add retaliation claims against

20   defendant Kernan.  Id. at 8-9.  Although, it is not clear whether plaintiff is stating that the earlier

21   case already made claims of retaliation based on defendants' not responding to his pain

22   complaints and that he was seeking to add a further claim of retaliation by defendant Kernan, or

23   that he was seeking to add as a claim therein retaliation in the form of not responding to his

24   medical grievances, nor does he state the result of his seeking to amend.  The court's review of

25   the relevant documents in the prior case indicates that plaintiff appears to have sought to add

26   claims, inter alia, to allege retaliation against him by defendant Kernan for the filing of that

1  action in the form of not responding to plaintiff's medical grievances. See Case No. 05-0310

2  MCE KJM P, docket # 29 & # 30.   In that case, plaintiff's request to amend was denied without

3  prejudice because plaintiff had sought to rely on the original complaint as well, thus failing to

4  include all of his claims in the amended complaint. Id., docket # 31.  Plaintiff evidently never

5  filed an amended complaint thereafter incorporating all of his claims, although in later filings he

6  references some of the allegations he now brings in this action. Id., docket # 34.

7          Plaintiff's too vaguely supported retaliation claims against defendant Kernan will

8  be dismissed with leave to amend.  Retaliation by prison officials for the exercise of a prisoner's

9  constitutional right of access to the courts violates the federal constitution. Pratt v. Rowland, 65

10  F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black

11  v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.

12  1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

13          Retaliation by prison officials for the exercise of a prisoner's constitutional right

14  of access to the courts violates the federal constitution.  Pratt v. Rowland, 65 F.3d 802, 807 (9th

15  Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Black v. Lane, 22 F.3d

16  1395, 1402 (7th Cir. 1994); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995); Rizzo v.

17  Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  Also, inmates have a right to be free from the filing

18  of false disciplinary charges in retaliation for the exercise of constitutionally protected rights.

19  Pratt v. Rowland, 65 F.3d at 807; Schroeder v. McDonald, 55 F.3d at 461; Rizzo v. Dawson, 778

20  F.2d at 532.  The Ninth Circuit treats the right to file a prison grievance as a constitutionally

21  protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines

22  v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance

23  procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d

24  1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for

25  pursing a grievance violates the right to petition government for redress of grievances as

26  guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80

1  (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing

2  prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary

3  actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589

4  (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is

5  precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation

6  omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for

7  complaint about food actionable).

8          In order to state a retaliation claim, a plaintiff must plead facts which suggest that

9  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

10  behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

11  1989); Rizzo 778 F.2d at 532.  The plaintiff must also plead facts which suggest an absence of

12  legitimate correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing

13  Rizzo at 532).  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v.

14  Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, even threats of bodily injury are

15  insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act

16  itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical

17  retaliation will not suffice, a prisoner must "allege specific facts showing retaliation because of

18  the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n.1)

19  (10th Cir. 1990).

20          In Pratt, the Ninth Circuit concluded that in evaluating retaliation claims, courts

21  should defer "to prison officials in the evaluation of proffered legitimate penological reasons for

22  conduct alleged to be retaliatory."  Pratt, 65 F.3d at 807 (citing Sandin v. Conner, 515 U.S. 472,

23  115 S. Ct. 2293 (1995)).

24          In an amended complaint, plaintiff must also demonstrate why, when he was

25  afforded the opportunity to do so in Case No. 05-0310 MCE KJM P, he failed to file a complete

26  amended complaint therein which incorporated the same allegations against defendant Kernan

7

1    herein, the gravamen of which he appears to have attempted to do, albeit in piecemeal fashion.

2    See Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir.2002) (stating that "res judicata, or

3    claim preclusion, prohibits lawsuits on 'any claims that were raised *or could have been raised*' in

4    a prior action" [emphasis in Stewart]).   Moreover, plaintiff must make clear how any claims,

5    which he has not set forth plainly but conclusorily makes in this action with regard to defendant

6    Kernan for inadequate medical care, have not been previously adjudicated.

7            Plaintiff alleges that the defendants "or some among them" conspired to deprive

8    him of his constitutional rights by "maliciously and sadistically placing and retaining plaintiff" in

9    segregated housing even though they know plaintiff is not a gangmember or associate.  Compl.,

10   pp. 9-10.  Defendant Brandon spoke to plaintiff in solitary and sent his subordinate defendant

11   Parker to videotape plaintiff and convince him to provide all the information he had about

12   gangmembers.  Id. at 10.  According to plaintiff, who references an exhibit, as he does

13   throughout his complaint but most often without setting forth the gravamen of what is contained

14   therein, plaintiff sent information he had on gangs without having been informed of something he

15   describes as "Policy Rule 3378.2."  Id.  Plaintiff states that defendant Brandon was aware that

16   plaintiff knew gangmembers "because (I) was sent to solitary after being gathered up with them."

17   Id.  Plaintiff then swears under penalty of perjury, without providing any information as to how

18   he knows it, that the IGIU under defendant Brandon "went straight out and put the information

19   hand written by plaintiff to use (even) bringing inmate to solitary (letting) it be known to inmates

20   that information came from plaintiff (who) can never go back out in regular prison main line due

21   to life in danger."  Id. at 10-11.  This occurred, according to plaintiff, because defendant Brandon

22   "was mad at plaintiff because plaintiff said the truth in conversation and hand written pages in

23   Exhibit (He) was not gangmember (or) associate (no) matter what plaintiff [sic] said defendant

24   Lt. Brandon in plaintiff's belief was working in conspiring with Lieutenant B. Holmes Defendant

25   5 and defendant 3."  Id. at 11.

26           Plaintiff accuses defendant Holmes "fabricated confidential informant information

1   used against him "by writing what he thinks plaintiff was talking about dated April 4, 2001 with

2   two inmates whom were <u>granted inactive status</u> and the meetings were <u>identified as relevant</u> to

3   BGF activities (that) <u>would</u> have been impossible for <u>defendant 5</u> <u>Holmes</u> to know unless he had

4   an informant (He) wrote what He (thinks) are wanted to write (and) uses it as confidential

5   material illegal (per) <u>Exhibit P</u> Herein California's Policy changes for validating inmates. (This)

6   Defendant 5 maliciously withheld plaintiff mails for over 30 days (more) than once (Defendant)

7   called plaintiff to watch office once and handed over 6 letter all over 30 days old (during) April

8   and May 2006." Compl., pp. 13-14.   Above, plaintiff having made a wholly unexplained leap

9   from complaining of unexplained confidential informant information used against him, which

10  was unrelated to the preceding allegations then leaps to complaints about his mail from an

11  apparently totally different time and then goes on to set forth that he wrote grievances against

12  defendant Holmes for withholding his mail. Id. at 14.  Plaintiff states that his family members

13  have filed citizen complaints against Holmes and goes on to state that the grievance system is not

14  respected and then throws in an allegation that defendant Holmes conspired with defendant

15  Kernan evidently, although not clearly, to hold up plaintiff's mail, defendant Kernan apparently

16  not knowing plaintiff's family would complain.   Id.   Plaintiff's allegations against defendants

17  Brandon, Parker and Holmes will be dismissed not because plaintiff may not be able to frame

18  colorable allegations against them but because he so patently violates the requirement of Rule 8

19  to set forth a "short and plain statement of the claim."   Plaintiff's allegations are circuitous,

20  tangled and overly lengthy while at the same time the factual bases for the claims are not

21  adequately set forth.  It is not enough to reference random exhibits throughout the complaint.

22  Plaintiff unduly burdens the court and any opposing parties by tasking them with the need to

23  ferret through voluminous exhibits to discern the factual predicate of a claim, if any.  Exhibits

24  may be attached to support allegations but may not be used to substitute for them.

25          As to his claims of conspiracy, plaintiff must make some showing of an

26  agreement or a meeting of the minds on the part of defendants to violate his constitutional rights.

9

1    Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989), citing Fonda v. Gray, 707

2    F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by material facts and not be

3    merely conclusory statements.  Lockary v. Kayfetz, 587 F. Supp. 631 (N. D. Cal. 1984).

4              Plaintiff garbles his claims against defendant Mandeville, referencing events that

5    occurred in 2001, as well as 2006.  Compl., pp. 14-16.  The gravamen of his allegations against

6    this defendant appears to be that his due process rights were violated at a disciplinary hearing

7    which hearing he does not plainly and clearly identify.  Defendant Mandeville will be dismissed

8    but plaintiff will be granted leave to amend.

9              As to defendant Malfi, once again plaintiff ranges from one unrelated issue to

10   another, starting out with complaining of inadequate medical care (for undescribed conditions)

11   and then plaintiff seeks to implicate him for apparently recognizing that "something was not right

12   about this whole gang thing," but nevertheless allowing defendants Mandeville and Brandon to

13   "control his actions...." signing off on an appeal identified simply as Exhibit U.  Compl., pp. 16-

14   18.  This defendant will be dismissed with leave to amend.

15             As to defendant Ruff, plaintiff ranges over inadequately explained events in the

16   years 2000, 2001, 2003, and 2006, among which is a barely coherent claim concerning a stay in

17   segregated housing for 12 days as a result of "fake," inadequately investigated allegations.

18   Compl. 18-19.  Plaintiff seeks to implicate both defendants Ruff and Tilton, id. at 25,  in their

19   supervisory capacities, but the Civil Rights Act under which this action was filed provides as

20   follows:

21             Every person who, under color of [state law] . . . subjects, or causes
              to be subjected, any citizen of the United States . . . to the
22             deprivation of any rights, privileges, or immunities secured by the
              Constitution . . . shall be liable to the party injured in an action at
23             law, suit in equity, or other proper proceeding for redress.

24   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

25   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

26   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

1  (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

2  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

3  omits to perform an act which he is legally required to do that causes the deprivation of which

4  complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5          Moreover, supervisory personnel are generally not liable under § 1983 for the

6  actions of their employees under a theory of respondeat superior and, therefore, when a named

7  defendant holds a supervisorial position, the causal link between him and the claimed

8  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

9  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

10  941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

11  in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

12  Cir. 1982).    To the extent that plaintiff seeks money damages, defendants Ruff and Tilton will

13  be dismissed with leave to amend.

14          To the extent that plaintiff seeks injunctive relief, just as it is not necessary to

15  allege Monell[4] policy grounds when suing a state or municipal official in his or her official

16  capacity for injunctive relief related to a procedure of a state entity, Chaloux v. Killeen, 886 F.2d

17  247 (9th Cir. 1989), it follows that it is not necessary to allege the personal involvement of a state

18  official when plaintiffs are attacking a state procedure on federal grounds that relates in some

19  way to the job duties of the named defendant.  All that is required is that the complaint name an

20  official who could appropriately respond to a court order on injunctive relief should one ever be

21  issued.  Harrington v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v. Tanner,

22  697 F. Supp. 1294, 1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief, as

23  opposed to monetary relief, may be made on a theory of respondeat superior in a § 1983

24  action."); Fox Valley Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).

25

26        [4]  Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

1    <u>See also</u>, <u>Hoptowit v. Spellman</u>, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit

2    to continue against an official's successors despite objection that the successors had not

3    personally engaged in the same practice that had led to the suit.   However, because a suit against

4    an official in his or her official capacity is a suit against the state, a practice, policy or procedure

5    of the state must be at issue in a claim for official capacity injunctive relief.   <u>Haber v. Melo</u>, 502

6    U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991).   If plaintiff seeks to implicate a state procedure or

7    policy as unconstitutional, he fails clearly to do so herein and defendants Ruff and Tilton will be

8    dismissed in their official capacities, with leave to amend.

9              Plaintiff tacks on an amorphous claim for inadequate medical care which he does

10   not link to any named defendant for putting him on a transfer bus without his medical file.   In

11   order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical

12   care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

13   indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct. 285, 292

14   (1976).   To prevail, plaintiff must show both that his medical needs were objectively serious, and

15   that defendants possessed a sufficiently culpable state of mind.   <u>Wilson v. Seiter</u>, 501 U.S. 294,

16   299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on

17   remand).   The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v.</u>

18   <u>McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

19            A serious medical need exists if the failure to treat a prisoner's condition could

20   result in further significant injury or the unnecessary and wanton infliction of pain.   Indications

21   that a prisoner has a serious need for medical treatment are the following:  the existence of an

22   injury that a reasonable doctor or patient would find important and worthy of comment or

23   treatment; the presence of a medical condition that significantly affects an individual's daily

24   activities; or the existence of chronic and substantial pain.   <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900

25   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01

26   (9th Cir. 1989).   <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> other

grounds, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  <u>Farmer</u>, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  <u>Id.</u> at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  <u>Id.</u> at 842, 114 S. Ct. at 1981.  This claim will be dismissed.

As to plaintiff's allegations of inadequate medical care and retaliation which implicate events that have occurred since plaintiff has been housed at Pelican Bay State Prison, Compl., pp. 20-25, those claims will be dismissed.  If plaintiff seeks to pursue those claims, he should file a civil rights action in the appropriate district.  The federal venue statute requires that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).  Defendants Horel and Sayre are located in Del Norte County, where the claims against them arose.  Del Norte County is in the Northern District of California. These defendants will be dismissed and plaintiff should file his claims against these defendants in a new action in the United States District Court for the Northern District of California.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  <u>See</u> <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed

13

1  deprivation.  <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir.
2  1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, vague and conclusory
3  allegations of official participation in civil rights violations are not sufficient.  <u>See</u> <u>Ivey v. Board</u>
4  <u>of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

5           In addition, plaintiff is informed that the court cannot refer to a prior pleading in
6  order to make plaintiff's amended complaint complete.  Local Rule 15-220 requires that an
7  amended complaint be complete in itself without reference to any prior pleading.  This is
8  because, as a general rule, an amended complaint supersedes the original complaint.  <u>See</u> <u>Loux v.</u>
9  <u>Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original
10  pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an
11  original complaint, each claim and the involvement of each defendant must be sufficiently
12  alleged.

13           In filing an amended complaint, plaintiff may not append the excessive number of
14  exhibits that he did to his original complaint.  The amended complaint may not exceed twenty-
15  five pages, including exhibits.

16           In accordance with the above, IT IS HEREBY ORDERED that:

17           1.  Plaintiff's request for leave to proceed in forma pauperis is granted.

18           2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.
19  Plaintiff is assessed an initial partial filing fee of $ 9.38.  All fees shall be collected and paid in
20  accordance with this court's order to the Director of the California Department of Corrections
21  and Rehabilitation filed concurrently herewith.

22  \\\\\
23  \\\\\
24  \\\\\
25  \\\\\
26  \\\\\

1         3.  The complaint is dismissed for the reasons discussed above, with leave to file

2 an amended complaint of twenty-five pages or less, including exhibits, within thirty days from

3 the date of service of this order.  Failure to file an amended complaint will result in a

4 recommendation that the action be dismissed.

5 DATED: 05/01/08                               /s/ Gregory G. Hollows

6                                       GREGORY G. HOLLOWS
                                      UNITED STATES MAGISTRATE JUDGE

7

8

9 GGH:009
vall0112.b

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26